UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT L. BEECHAM, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, et al., <br><br> Defendants. | Civil Action No. 01-2243 <br> RWR/DAR |

# REPORT AND RECOMMENDATION

Plaintiffs, through two groups of counsel, maintain that they and the Defendants reached an agreement settling all claims and entering judgment with respect to each Plaintiff in a designated amount.  Plaintiffs' Expedited Motion for Enforcement of the Settlement Agreement (Document No. 98); Plaintiffs' Expedited Motion to Enforce the Settlement Agreement (Document No. 130).[1]

Defendants maintain that they entered settlement negotiations, but that no agreement was ever entered.  *See, e.g.,* Defendants' Opposition to [Fay Plaintiffs'] Expedited Motion for

---

[1] The motion which was assigned Document No. 98 was filed by counsel who hereinafter will be identified as "Fay"; the Plaintiffs on whose behalf Document No. 98 was filed will hereinafter be identified, in instances in which a distinction among Plaintiffs is warranted, as the "Fay Plaintiffs."  The motion which was assigned Document No. 130 was filed by counsel who hereinafter will be identified, in instances in which a distinction among counsel is warranted, as "Stein"; the Plaintiffs on whose behalf Document No. 130 was filed will hereinafter be identified, in instances in which a distinction among Plaintiffs is warranted, as the "Stein Plaintiffs."  The name of one Plaintiff–Jordan Edwards–appeared in both motions.  Through Stein, Plaintiff Edwards moved to "disqualify" Fay; the undersigned granted the motion, and struck from the record the appearance of Fay on behalf of Plaintiff Edwards. *See* May 31, 2007 Order (Document No. 114) at 3-4.

Beecham, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.                                    2

Enforcement of Settlement Agreement ("Defendants' Opposition') (Document No. 99).  More specifically, Defendants–collectively identified by their counsel as "Libya"–state:

> Libya concedes that settlement <u>negotiations</u> were entered into between Libya and the Plaintiffs.  Libya further concedes that the terms of a settlement were agreed upon by the parties to the settlement negotiations.  Libya further concedes that Libya's representatives had express authority to <u>negotiate</u> and define the terms of a settlement agreement.
>
> A final and binding settlement agreement was not executed and that plaintiffs were informed that due to the lack of the necessary authorizations a settlement agreement was not in place.

Defendants' Opposition at 1.

The undersigned conducted separate evidentiary hearings, the first with respect to the motion filed on behalf of the Fay Plaintiffs, and the second with respect to the motion filed on behalf of the Stein Plaintiffs.  In accordance with the undersigned's scheduling order, the Fay Plaintiffs filed their closing argument, Defendants filed their closing argument and the Fay Plaintiffs filed their reply argument (*see* Document Nos. 88, 90 and 92); in like manner, the Stein Plaintiffs filed their closing argument, Defendants filed their closing argument and the Stein Plaintiffs filed their reply argument (*see* Document Nos. 115, 117 and 119).

Upon consideration of the motions; the memoranda in support thereof and in opposition thereto (Document Nos. 55, 56, 62, 63,65, 66, 99, 100); the evidence adduced at the hearing; the closing arguments of counsel, and the entire record, both motions will be denied.

**BACKGROUND**[2]

---

[2] *See generally* March 31, 2007 Memorandum Opinion and Order (Document No. 102) at 1-4; May 21, 2007 Memorandum Order (Document No. 113).

Beecham, et al. v.  Socialist People's Libyan Arab Jamahiriya, et al.                                        3

On April 5, 1986, a bomb exploded in La Belle Discotheque in Friednauer, Germany, a location which Plaintiffs allege was frequented by off-duty members of the United States armed services.  Plaintiffs characterize the event as a "Libyan state-sponsored terrorist bombing[.]" Consolidated Fourth Amended Complaint (Document No. 120) at 18.[3]  Two Americans were killed by the blast, and an additional 230 people were injured.  The 67 Plaintiffs are among the individuals who were injured, family members of the injured, and representatives of the personal estates of those who were killed.  March 31, 2007 Memorandum Opinion and Order at 3.

Defendants are the Socialist People's Libyan Arab Jamahiriya (to which Plaintiffs refer as "Libya"), and enumerated agencies, officials and agents thereof.   Plaintiffs allege that Libya is a foreign state designated as a "state sponsor of terrorism" in accordance with United States law, and that Libya, acting through its agencies, officials and agents, committed the acts of terrorism which are the subject of the complaint; "provided material support and resources to the perpetrators of the terrorist acts"; and "sponsored the perpetrators, within the meaning of [federal law], by providing them with funding, planning, direction, and training for their terrorist activities."  Consolidated Fourth Amended Complaint, ¶67.

Prior to the first of the two evidentiary hearings with respect to the pending motions, Defendants, through their counsel of record, represented that "[D]efendants and the representatives of all [P]laintiffs[] are in [sic] continuing the process of resolving the above captioned dispute by an out court process[,]" and that "the issues currently pending before the

---

[3] Although the Consolidated Fourth Amended Complaint was not filed until after the pending motions to enforce settlement agreements, leave to file such pleading was sought before the pending motions were filed.  *See* n.2, *supra*.  The court, unless otherwise noted, cites the Consolidated Fourth Amended Complaint for allegations relevant to the determination of the pending motions.

Beecham, et al. v.  Socialist People's Libyan Arab Jamahiriya, et al. 4

Court will most likely become moot within a short time."  Defendants' Status Report (Document No. 66) at 1; *see also* Defendants' Motion to Continue Hearing/Status Conference (Document No. 68) at 1 ("Counsel [for Defendants] is in the process of receiving instructions for a possible resolution of this case by means other than continuing this litigation.").

Defendants identified Azzam Eddeeb, a judge of the Libyan Supreme Court, as one of three members of a "'committee' which was authorized to negotiate a settlement in the above captioned matter"; that "the terms negotiated and approved by [Judge Eddeeb] would then be submitted to the remaining members of the committee for a <u>final</u> approval[,]" and that "a settlement agreement could not be entered into without such a <u>final</u> approval by all members of the committee."  Declaration of Arman Dabiri in Support of Defendants' Opposition to Plaintiffs' Expedited Motion for Enforcement of Settlement Agreement (Document No. 63) at 1-2.[4]  However, both the Fay Plaintiffs and the Stein Plaintiffs maintain that Judge Eddeeb claimed that he was authorized to settle the case, and that he refused to execute the agreement memorializing the offers which Plaintiffs had accepted.  Fay Plaintiffs' Closing Argument at 2-3; Stein Plaintiffs' Closing Argument at 3-12.

**APPLICABLE STANDARDS**

"It is well established that federal district courts have the authority to enforce settlement agreements entered into by litigants in cases pending before them."  *Hall v. George Washington Univ.*, No.CIV.A.99-1136, 2005 WL 1378761, at *3 (D.D.C. May13, 2005).  "When there is a

---

[4] In the Stein Plaintiffs' written submissions, the judge's name is spelled "Edeeb[.]"  *See* Document Nos. 115, 118, 130.

Beecham, et al. v.  Socialist People's Libyan Arab Jamahiriya, et al.                                                    5

genuine dispute about whether the parties have entered into a binding settlement, the district court must hold an evidentiary hearing[.]" *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001).  When there is a dispute as to whether there is a settlement, the party moving for enforcement of the settlement agreement has the "burden of showing, by clear and convincing evidence, that the parties in fact formed a binding agreement in resolution of all the disputed issues in the underlying litigation." *Hall*, 2005 WL 1378761, at *4 (citing *Quijano v. Eagle Maint. Servs., Inc.,* 952 F. Supp.1, 3 (D.D.C. 1997)).  The "'clear and convincing evidence' standard of proof requires that the party bearing the burden of proof on a given issue present evidence sufficient to allow the court to 'reach a firm conviction of the truth on the evidence about which [it] is certain.'" *Samra v. Shaheen Bus. & Inv. Group, Inc*., 355 F. Supp. 2d 483, 494 (D.D.C. 2005) (citing *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994)).  "A 'firm conviction' or a 'reasonable certainty' are not the same as an 'absolute certainty,' and so it follows that the presence of factual disputes cannot necessarily or definitionally preclude a showing, by clear and convincing evidence . . ." that a valid settlement agreement existed.  *Id*.

In the District of Columbia Circuit, the issue of "[w]hether parties have reached a [valid] settlement [agreement] is a question of contract law." *Mahoney*, 247 F.3d at 285.  State contract law governs the enforcement of settlement agreements.  *Makins v. District of Columbia*, 277 F.3d 544, 547 (D.C. Cir. 2002).  "The District of Columbia adheres to the 'objective law of contracts,' meaning that the court must look at the parties' objective manifestations of intent in interpreting settlement agreements." *Hood v. District of Columbia*, 211 F. Supp. 2d 176, 180 (D.D.C. 2002) (citing *Simon v. Circle Assocs.,* 753 A.2d 1006, 1012 (D.C. 2000)).  "In the District of Columbia, a complete enforceable contract exists when there is (1) an agreement as to all the material terms;

Beecham, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.                          6

and (2) an intention of the parties to be bound." *Id.* at 179 (citing *Mahoney*, 247 F.3d at 285); *See also Simon v. Circle Assocs.,* 753 A.2d 1006, 1012 (D.C. 2000). "There must . . . be an honest and fair 'meeting of the minds' as to all issues in a contract." *Id*. (citing *Simon*, 753 A.2d at 1012). "The parties to a settlement agreement 'must intend the words and acts which constitute their manifestation of assent.'" *Id.* (citing *Simon*, 753 A.2d at 1012). "Agency principles are applied to determine whether the attorney or agent had authority to bind his principal to the settlement contract." *Makins v. District of Columbia*, 861 A.2d 590, 593 (D.C. 2004) (citing *Bronson v. Borst*, 404 A.2d 960 (D.C. 1979); *Feltman v. Sarbov*, 366 A.2d 137,139 (D.C. 1976)). It has been well established that an agent may execute a legally binding settlement agreement on behalf of a client if the agent has actual authority. *Id*. Actual authority is created by "written or spoken words or other conduct of the principal, which reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Evans v. Skinner,* 742 F. Supp. 30, 32 (D.D.C. 1990) (citing Restatement (Second) of Agency § 26 (1958)). Apparent authority is "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestation to such third persons. *Id.* at 33 (citing Restatement (Second) of Agency § 8 (1958)). "Further, in order to create apparent authority, the *principal[s]* must manifest to the third party that [they] 'consent[] to have the act done on [their] behalf by the person purporting to act for [them].'" *Id.* (citing Restatement (Second) of Agency § 27 (1958)) (emphasis supplied). Apparent authority depends upon "the third-party's perception of the agent's authority." Such perception may be based upon "written or spoken words or any other conduct of the principals which, reasonably interpreted, causes the third party to believe that the

Beecham, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.                                    7

principals consent to have the act done on [their] behalf by the person purporting to act for [them]." *Makins,* 861 A.2d at 594; *see also* Restatement (Second) of Agency § 27 (1958).

**DISCUSSION**

The undersigned concludes that Plaintiffs have failed to discharge their "burden of showing, by clear and convincing evidence, that the parties in fact formed a binding agreement in resolution of all the disputed issues in the underlying litigation." *See Hall,* 2005 WL 1378761, at *4 (citation omitted). This conclusion is predicated upon findings with respect to the two principle considerations the applicable authority instructs the undersigned to consider: (1) whether or not Plaintiffs demonstrated that Judge Eddeeb, Defendants' agent, had authority to bind Defendants, and (2) whether the parties reached an agreement with respect to all material terms of a settlement agreement and intended that both Plaintiffs and Defendants be bound.

*Did Judge Eddeeb have authority to bind Defendants?*

The undersigned finds that neither the Fay Plaintiffs nor the Stein Plaintiffs demonstrated, by clear and convincing evidence, that Judge Eddeeb had either actual or apparent authority to bind Defendants. The Fay Plaintiffs relied upon the testimony of three witnesses–Mr. Fay; Harry Brandon, a consultant engaged by the Fay Plaintiffs; and Steven Perles, another of the Fay Plaintiffs' counsel of record–in support of their contention that Judge Eddeeb had authority to bind Defendants. Mr. Fay testified that in a June 8, 2006 meeting,

> Judge Eddeeb stated that he had authority, the same thing he said
> in the speech that was televised, I might add, a couple days before,
> and to execute an agreement but that he wanted a global agreement
> and he hadn't spoken yet to Mr. Stein's people and said he would

Beecham, et al. v.  Socialist People's Libyan Arab Jamahiriya, et al.                                           8

>     sign a global agreement on July the 7th.

Transcript of November 8, 2006 Evidentiary Hearing (Document No. 78) ("November 8, 2006 Tr.") at 3.[5]

   Mr. Brandon testified that at the same meeting, Judge Eddeeb "said that he had authority to sign–to formalize the agreement that was already in existence, but he said he was not going to do so as he wished to reach what he called a global agreement which included the other parties that were not represented by Fay and Perles."  November 8, 2008 Tr. at 51.  Later, Mr. Brandon again said that Judge Eddeeb stated that "I have the authority to sign it, but I choose not to[,]" when Brandon was asked whether Eddeeb indicated that the agreement "needed to be approved by any further higher authority[.]"  *Id.* at 52.  On cross-examination, Mr. Brandon was asked whether the "authority" to which Judge Eddeeb referred "[c]ould . . . possibly have been referring to the authority to negotiate the terms and approve the terms for recommendation to a committee in Libya[]"; in response, Mr. Brandon agreed that "[h]e could have been [.]"  *Id.* at 56-57.  Mr. Brandon also acknowledged on cross-examination that he was aware that Judge Eddeeb was one member of a three-member committee which historically made recommendations to a Libyan official regarding terms of any settlement agreements.  *Id.* at 57-60.

   Mr. Perles, upon examination by Mr. Fay regarding a September, 2006 meeting attended by counsel, Judge Eddeeb and others, was asked "Did the Judge Azzam Eddeeb at any time indicate that he did not have authority to bind Lybia to the settlement that has drawn us here

---

[5] Mr. Fay acknowledged that Judge Eddeeb did not sign any agreement on July 7, 2006.  *Id.* at 5-10, 18.

Beecham, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.                                          9

today?" Mr. Perles responded simply "No." November 8, 2006 Tr. at 76.[6]

The Stein Plaintiffs relied entirely upon the testimony of Mr. Stein. During direct examination by another counsel of record for the Stein Plaintiffs regarding a June 7, 2006 meeting with Judge Eddeeb and counsel for the Stein Plaintiffs, Mr. Stein testified:

> Q: Did he make any representation as to whether or not he had authority to make [the offer which Defendants' counsel had previously described]?
>
> A: Yes
>
> Q: What representations did he make?
>
> A: He said he was here for the purpose of making the offer. He said that he had settled other cases authorized by Libya, and he convinced us certainly that he was the man who was going to settle the case.

Transcript of May 3, 2007 Evidentiary Hearing (Document No. 154) ("May 3, 2007 Tr.") at 17-18.

The undersigned finds that in each instance, Plaintiffs demonstrated that Judge Eddeeb had authority to negotiate agreements between Plaintiffs and Defendants on behalf of Libya, but failed to prove by clear and convincing evidence that Judge Eddeeb had either actual or apparent authority to bind the Defendants. The evidence offered by both the Fay Plaintiffs and the Stein Plaintiffs included testimony regarding the negotiations among Judge Eddeeb, counsel and other participants. However, neither the Fay Plaintiffs nor the Stein Plaintiffs offered any evidence that Judge Eddeeb ever represented that he had authority to bind Libya; nor did Plaintiffs offer

---

[6] Mr. Perles was not present during the June, 2006 meetings, during which Plaintiffs allege Judge Eddeeb bound Libya to the terms of an agreement. *Id.* at 79-80.

Beecham, et al. v.  Socialist People's Libyan Arab Jamahiriya, et al.                                              10

evidence from which any apparent authority reasonably could be inferred.[7]

The gist of the evidence offered by the Fay Plaintiffs is that Judge Eddeeb said that he had authority to "execute" or "sign" an agreement.  However, in the context of all of the evidence offered by the Fay Plaintiffs regarding the parties' settlement negotiations, the only reasonable inference which can be drawn from such testimony–which the undersigned credits for the purpose of the evaluation of the Fay Plaintiffs' pending motion–is that Judge Eddeeb advised that he was authorized to sign, on behalf of Defendants, any agreement ultimately approved by the parties and reduced to writing.[8]  The undersigned finds that authority to negotiate on behalf of one side, and to "execute" or "sign" a writing memorializing a meeting of the minds of the parties to a settlement, is a far cry from authority to bind that side.  Indeed, Mr. Fay's own testimony that "[Judge Eddeeb] was more [than] a little hazy on who it was exactly who had instructed him not to sign, whether perhaps it was his determination[,]" belies the Fay Plaintiffs' contention that Judge Eddeeb had authority to bind Defendants.  November 8, 2006 Tr. at 5; *see also id.* at  7-8.

The same observation applies to the evaluation of the evidence offered by the Stein Plaintiffs.  Mr. Stein testified that Judge Eddeeb said, on June 7, 2006, that "he was here for the

---

[7] Indeed, Mr. Fay, during argument with respect to an objection, suggested–erroneously–that Defendants bore the burden of showing that Judge Eddeeb did not have authority to bind Defendants.  November 8, 2006 Tr. at 53 ("The government of Libya, not Muammar Qadhafi, not the prime minister of Libya, not the foreign minister of Libya, nor anyone else has filed anything stating that [Judge Eddeeb] *did not have actual authority* on June 8 to make this binding commitment.") (emphasis supplied).
   The Stein Plaintiffs, in like manner, suggested that Defendants' failure to call Judge Eddeeb as a witness at the evidentiary hearing represents a determination that Defendants "put the issue of sovereign immunity above the issue of *proving their defense* [at the evidentiary hearing on the Stein Plaintiffs' motion to enforce the putative settlement agreement]."  May 3, 2007 Tr., at 76 (emphasis supplied).

[8] *See* n.5, *supra*.

Beecham, et al. v.  Socialist People's Libyan Arab Jamahiriya, et al.                                          11

purpose of making the offer[,]" and that "he had settled other cases authorized by Libya[.]"  May 3, 2007 Tr. at 18.  Later, Mr. Stein recalled that Judge Eddeeb said that he could not change any of the terms of the putative agreement, and that "if [the Stein Plaintiffs] insisted that the negotiation was taking a turn that would require *the Libyan representative* to reconsider the offer, there would be a great delay because *other people would have to be involved.*"  *Id*. at 26 (emphasis supplied).

The undersigned finds that the evidence offered by both the Fay Plaintiffs and the Stein Plaintiffs relates solely to Judge Eddeeb's authority to negotiate.  No authority supports the proposition that the subjective impression of counsel is a basis upon which a court can find that a participant in negotiations had either actual or apparent authority to bind one side.[9]

*Did the parties reach an agreement with respect to all material terms of their putative settlement and intend that both sides be bound?*

Even assuming, *arguendo,* that Judge Eddeeb had authority to bind Defendants, the undersigned finds that the pending motions to enforce the putative settlement agreements must be denied by reason of Plaintiffs' failure to show by clear and convincing evidence that both sides reached an agreement with respect to all material terms and intended that both sides be bound.  *See*, *e.g., Hood*, 211 F. Supp. 2d at179 ("In the District of Columbia, a complete enforceable contract exists when there is (1) an agreement as to all material terms; and (2) an intention of the parties to be bound.") (citations omitted).

Both the Fay Plaintiffs and the Stein Plaintiffs effectively concede that as of June, 2006,

---

[9] *See, e.g.,*May 3, 2007 Tr. at 18. ("[H]e convinced us certainly that he was the man who was going to settle the case[]").

Beecham, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.        12

the two sides had not reached an agreement with respect to all material terms. Mr. Fay, testifying on behalf of the Fay Plaintiffs, acknowledged that Judge Eddeeb said "that he wanted a global agreement executed and he hadn't spoken yet to Mr. Stein's people and said he would sign a global agreement on July 7th." November 8, 2006 Tr. at 3. While Mr. Fay testified regarding a July 7, 2006 meeting, he did not maintain that a "global agreement" had been reached by that time. *Id.* at 9.[10] Mr. Brandon's testimony was consistent: "[Judge Eddeeb] said he was not going to [formalize the agreement] as he wished to reach what he called a global agreement which included the other parties that were not represented by Fay and Perles. *Id.* at 51. In a June 9, 2006 letter, Mr. Fay wrote that he would not return to the meeting venue "*unless* there is an agreement." *Id.* at 36 (emphasis supplied).

Mr. Stein, on behalf of the Stein Plaintiffs, testified that Judge Eddeeb conveyed an offer; that Defendants' counsel of record sent a release, which each of his clients signed; and that there were no "conditions . . . that must be met prior to payment by Libya." May 3, 2007 Tr. at 25-30. However, he acknowledged that as of the date of a July, 2006 meeting after the releases were executed, the parties had not yet reached a meeting of the minds regarding the manner in which the funds would be paid. *Id.* at 34. More notably, Mr. Stein acknowledged that the release form sent by Defendants' counsel was not accompanied by a settlement agreement, as "[t]here was none in existence." *Id.* at 47.[11] Later, Mr. Stein –like Mr. Fay – agreed that "Judge Eddeeb . . .

---

[10] Additionally, Mr. Fay acknowledged that "there has been [a] conflict or questions regarding a certain number of plaintiffs as to representation, whether they were represented by you and Mr. Perles and by the law firm of Stein, Mitchell & Mezines." *Id.* at 31-32. Indeed, Mr. Fay volunteered that "Libya was concerned about any dispute between myself and Mr. Perles or ourselves and Mr. Stein." *Id.* at 32.

[11] When asked on cross-examination whether there was "a settlement agreement signed by any representative, agent, official, or counsel of Libya with your firm in this matter[,]" Mr. Stein replied "No." *Id.* at 60; *see also* n.5, *supra*, and accompanying text.

Beecham, et al. v.  Socialist People's Libyan Arab Jamahiriya, et al.                                                         13

had offered [as a] condition, that all the clients, your clients, had to accept the settlement agreement, in essence an all or none settlement agreement[.]" *Id.* at 49.

The undersigned finds that the foregoing considerations, evaluated in context, bespeak the absence both of a meeting of the minds and of an intention of all parties to be bound.  Both the Fay Plaintiffs and the Stein Plaintiffs advanced the conclusion that the parties had reached agreement with respect to all material terms.  However, both Mr. Fay and Mr. Stein agreed that a number of issues remained unresolved as of the conclusion of the meetings about which they testified: (1) Defendants insistence on a "global agreement";[12] (2) the determination with respect to the identities of the Plaintiffs who were represented by Mr. Fay and his co-counsel, and the identities of the Plaintiffs who were represented by Mr. Stein and his co-counsel; (3) disputes between Mr. Fay and co-counsel Mr. Perles;[13] and (4) the manner in which Defendants would tender the proceeds of any settlement.[14]

Moreover, Plaintiffs concede that no settlement agreement was ever signed.  While another judge of this court has observed that "[t]he D.C. Circuit has instructed that settlement agreements do not have to be in writing to be enforceable," the "absence of a written agreement" may evidence a lack of "mutual assent" to all material terms.  *Hood*, 211 F. Supp. 2d at 181.  Given the number

---

[12] Neither Mr. Fay nor Mr. Stein testified that a "global agreement" was ever reached.

[13] November 8, 2008 Tr. at 23-37.

[14] Except as noted in n.1, *supra*, Plaintiffs offered no evidence that these issues had been resolved as of the dates of the evidentiary hearings, the latest of which was nearly a year after the 2006 meetings in which settlement negotiations took place.  Since the evidentiary hearings, the Fay Plaintiffs and the Stein Plaintiff joined in a motion for leave to file their Consolidated Fifth Amended Complaint (Document No. 134) not only to substitute the citation to recent legislation for the citation which may have been rendered inaccurate, but also to seek additional relief pursuant to the revised legislation.  The court (Roberts, J.) granted said motion on April 25, 2008.  *See* Document No. 145; *see also* n.3, *supra*.

Beecham, et al. v.  Socialist People's Libyan Arab Jamahiriya, et al.                                                14

of Plaintiffs, the number of Defendants, the number of counsel, the complexity of the issues presented, and the diplomatic and political implications of the agreements under consideration, the "absence of a written agreement" virtually compels a finding that there "was no mutual assent" concerning all material terms.  *Id.*

   Indeed, even where a court finds that the parties to a civil action have reached an agreement to settle the case, the court in its determination of whether the parties intend to be bound by the agreement in the absence of an executed document, must consider, among other factors, "whether the agreement at issue is the type of contract that is usually committed to writing[.]  *Collick v. United States,* No. 05-5968, 2008 WL 2020401 (E.D.N.Y. April 28, 2008), at * 3.  There can be no dispute that an agreement to settle a civil action involving 67 Plaintiffs, 17 Defendants, and at least eight lawyers, in which complex issues are presented, and as to which settlements would have far-reaching diplomatic and political implications, "is usually committed to writing[.]"  Thus, assuming, *arguendo*, that the court were to find that the parties had in fact reached an agreement to settle the case, the absence of a written settlement agreement executed by all parties could well be deemed a factor which would preclude enforcement of it.

**CONCLUSION**

   The undersigned finds that neither the Fay Plaintiffs nor the Stein Plaintiffs have shown by clear and convincing evidence that Judge Eddeeb had authority–actual or apparent–to bind Libya to the terms of any settlement agreement; nor have they shown that the parties reached a meeting of the minds with respect to the terms of a settlement agreement and intended to be bound by the terms.  It is, therefore, this 19th day of June, 2008,

Beecham, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.                           15

**RECOMMENDED** that the Fay Plaintiffs' Expedited Motion for Enforcement of the Settlement Agreement (Document No. 98) be **DENIED;** and it is

**FURTHER RECOMMENDED** that the Stein Plaintiffs' Expedited Motion to Enforce the Settlement Agreement (Document No. 130) be **DENIED.**[15]

                                                                                                           /s/
                                                                                              DEBORAH A. ROBINSON
                                                                                              United States Magistrate Judge

**Within ten days of the filing of the instant Report and Recommendation, any party may file written objections.  Such objections shall specifically identify the portions of the Report and Recommendation to which an objection is made, and the basis of the objection.  In the absence of timely objections, further review of issues decided herein may be deemed waived.**

---

[15] The undersigned makes no findings or recommendations herein with respect to this court's subject matter jurisdiction, a matter which will be determined by the assigned United States District Judge. *See* Document Nos. 121, 122, 123, 131, 139, 140.